IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER D'AGOSTINO,<br>    Plaintiff<br><br>    v.<br><br>MONTGOMERY COUNTY, et al.<br>    Defendants. | :<br>:   CIVIL ACTION NO. 11-7728<br>:<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                                                                                           **February 9, 2012**

      Plaintiff, Peter D'Agostino, brings the instant action against Defendants Montgomery County ("the County"), Dr. Margaret Carrillo, unidentified Physician Assistant(s) "Doe(s)," unidentified nurse(s) "Roe(s)," and Correctional Medical Care, Inc. ("CMC"), a privately-owned company which provides health care services to inmates at the Montgomery County Correctional Facility ("MCCF") pursuant to a contract with the County.  Plaintiff alleges that the individuals charged with providing him with medical care as an inmate at MCCF were deliberately indifferent to his serious medical needs, violating his right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.  In addition, Plaintiff asserts that the County and CMC are liable for the actions of the individual defendants.  Finally, Plaintiff alleges state law negligence claims (professional malpractice) against CMC and the individual defendants.  Before the Court is Defendants' Motion to Dismiss all counts.

**I.**     **BACKGROUND**

      The facts alleged in the Complaint are assumed to be true for the purposes of the Motion to Dismiss, and any inferences drawn therefrom are viewed in the light most favorable to Plaintiff as the non-moving party.

Plaintiff's Illness

In February 2010, while incarcerated at MCCF, Plaintiff developed severe, radiating lower back pain and fever. On February 10, 2010, he was examined by a CMC Physician's Assistant ("PA"), who noted that Plaintiff had back, arm, and leg pain, a 104 degree fever, and an elevated pulse. The PA preliminarily diagnosed Plaintiff with a urinary tract infection, ordered a test to confirm the diagnosis, and prescribed antibiotics and acetaminophen.

On February 13, 2010, Plaintiff was seen by Dr. Carrillo, who noted that laboratory tests had come back negative for urinary tract infection. From February 10 through February 19, Plaintiff's symptoms became worse. His white blood cell count was rising, indicating that Plaintiff had an infection which was not responding to the antibiotic treatment. On February 17, Dr. Carrillo examined Plaintiff again. By that time, Plaintiff was confined to a wheelchair, unable to lift his legs. Nevertheless, Dr. Carrillo did not change the treatment plan developed on February 10, nor did she order additional diagnostic tests.

On February 19, 2010, Dr. Carrillo referred Plaintiff to the emergency room at Mercy Suburban Hospital for further evaluation and treatment. An MRI revealed that Plaintiff had a spinal abscess. Plaintiff was transferred to Temple University Hospital for surgery to drain the abscess. Plaintiff was hospitalized at Temple from February 19, 2010 through March 9, 2010, and then entered Moss Rehabilitation where he remained an inpatient until March 25, 2010. After his discharge, he received outpatient treatment at Moss through September 2010. Plaintiff continues to suffer serious physical problems as a result of his spinal cord injury, including limited mobility, severe pain, and the need to catheterize himself to void his bladder.

CMC's Contract with the County

Defendant CMC had a contract with Montgomery County to provide medical services to

inmates at MCCF from 2007 through 2010.  For the year 2010, the contract provided that the County would pay CMC more than $4 million to provide medical services to MCCF inmates.  CMC agreed to cover the costs of any outside medical services inmates required, including hospitalizations.  Thus, referring inmates for medical services outside of MCCF would decrease CMC's annual profit.  Dr. Carrillo, as CMC's medical director, had sole discretion to determine whether inmates would be referred for outside medical services.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[1] and "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element" of a claim.[2] Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."[3]  The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[4]

In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[5]  Although the

---

[1] Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); see also Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1323 (2011).

[2] Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)) (internal quotation omitted). At the motion to dismiss stage, a court does not determine whether the plaintiff will prevail, but only whether he will be permitted to seek evidence in support of the claims in the complaint. See Twombly, 550 U.S. at 556, 558-59.

[3] Twombly, 550 U.S. at 555 (citation omitted).

[4] Skinner v. Switzer, 131 S. Ct. 1289, 1296 (2011) (citation omitted).

[5] Phillips, 515 F.3d at 233 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Court must draw all reasonable inferences from the allegations in favor of the plaintiff,[6] it need not accept as true "unsupported conclusions and unwarranted inferences,"[7] or the plaintiff's "bald assertions" or "legal conclusions."[8]

### III. DISCUSSION

Defendants have moved to dismiss the complaint arguing that Plaintiff: (1) failed to exhaust administrative remedies; (2) failed to state a claim of deliberate indifference against the individual defendants; (3) failed to state a constitutional claim against MCCF and CMC under Monell; and (4) failed to file certificates of merit in support of the state-law professional malpractice claims, as required by Pennsylvania Rule of Civil Procedure 1042.3.  Defendants attached a declaration to their motion, and Plaintiff filed attachments to his response, including his own declaration.  The Court will not consider the attachments at this time, as doing so would convert the motion to dismiss to a motion for summary judgment prematurely.

    1.    Exhaustion

The Prison Litigation Reform Act[9] ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a civil rights action in federal court.  Plaintiffs need not plead exhaustion, however, as failure to exhaust is an affirmative defense that must be raised and proven by defendants.[10]  The PLRA does not create or impose an administrative procedure for the handling of prisoners' grievances; rather it requires plaintiffs to utilize the procedures created by

---

[6] Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010).

[7] Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (quotation omitted).

[8] Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d. Cir. 1997)).

[9] 42 U.S.C. § 1997e.

[10] Ray v. Kertes, 285 F.3d 287, 295-96 (3d Cir. 2002).

the institutions in which they are incarcerated. The Inmate Grievance Procedure at MCCF requires inmates to file a grievance within seven calendar days of a triggering event, and states that late-filed grievances will returned to the inmate without review.

Here, Plaintiff was hospitalized and gravely ill during the seven-day period allowed for the filing of an administrative complaint at MCCF. Furthermore, Plaintiff was released from MCCF custody on February 24, 2010, while hospitalized and without ever returning to MCCF. These circumstances are sufficient to support a finding that the Inmate Grievance process was unavailable to him. As the PLRA requires inmates to exhaust all *available* administrative remedies, not all remedies,[11] Defendants' motion to dismiss for failure to exhaust administrative remedies will be denied.

    2.    <u>Count I: Deliberate Indifference by Individual Defendants</u>

Plaintiff alleges that individual defendants Dr. Carrillo, "Doe" and "Roe" violated his rights under the Eighth Amendment to the Constitution, which prohibits cruel and unusual punishment of prisoners, by displaying deliberate indifference to his serious medical condition.[12] The Supreme Court has ruled that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. This is true [when] the indifference is manifested by prison doctors in their response to the prisoner's needs . . . ."[13]

To survive a motion to dismiss, Plaintiff must allege (1) a serious medical need, and (2)

---

[11] The burden of proving the availability of the administrative process lies with Defendants. <u>Brown v. Croak</u>, 312 F.3d 109, 111 (3d Cir. 2002); <u>Berry v. Klem</u>, 283 F. App'x 1, 4 (3d Cir. 2008).

[12] It is well established that private entities that contract with a county to provide medical services to prison inmates, and the employees of those entities, are acting "under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 53-58 (1988). Therefore, Plaintiff may bring claims against the individual defendants, who are employees of CMC, under 42 U.S.C. § 1983.

[13] <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976) (citing <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)).

acts or omissions by prison personnel that indicate deliberate indifference to that need.[14] Plaintiff has plainly alleged a serious medical need, and Defendants do not dispute that allegation. However, individual defendants do dispute the allegation that they were deliberately indifferent to that need.

To show deliberate indifference, a plaintiff must allege more than mere negligence or medical malpractice.[15] A plaintiff must allege that the defendants had facts from which they could infer a substantial risk of serious harm to the plaintiff's health, and that they acted or failed to act without regard to that risk.[16]

Here, Plaintiff alleges that he was first seen by Dr. Carrillo on February 13, 2010. At that time, Dr. Carrillo was aware that Plaintiff was suffering from an infection, that it was not in fact a urinary tract infection, and that he was not responding positively to the antibiotics prescribed by the physician's assistant on February 10, 2010. On February 17, Dr. Carrillo examined Plaintiff again. At that time, Dr. Carrillo noted that Plaintiff was in a wheelchair and unable to raise his legs without using his arms. However, Dr. Carrillo did not change the medications prescribed on February 10, nor did she order additional diagnostic tests until February 19, when Plaintiff was referred to an emergency room for diagnosis and treatment. The Court finds that the facts before Dr. Carrillo clearly warranted a change in the treatment plan, and her failure to engage in further diagnostic efforts and to implement a new treatment plan in the face of Plaintiff's worsening condition were made without regard to the readily apparent risk of harm to the inmate's health.[17]

---

[14] Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

[15] Farmer v. Brennan, 511 U.S. 825, 836 (1994).

[16] Farmer, 511 U.S. at 837, 841-42.

[17] See Ramos-Vazquez v. Primecare Med., Inc., No. 09-364, 2010 WL 3855546, at *7 (E.D. Pa. Sept. 30, 2010) (where plaintiff alleged that the medical treatment provided was utterly ineffective and in fact his serious medical condition was worsening under the care of prison medical providers, he had a cognizable claim for

In addition, Plaintiff has alleged that CMC had financial incentives to deny referrals to outside medical treatment, from which the Court can infer that necessary medical treatment may have been delayed for non-medical reasons.[18]  For these reasons, the Court finds Plaintiff's allegations are sufficient to state a claim of deliberate indifference against Dr. Carrillo.

As to the other individual defendants, Plaintiff alleges that Doe examined him on February 10, 2010, made a preliminary diagnosis based upon the presenting symptoms, ordered a test to confirm the diagnosis, and immediately provided treatment appropriate to the preliminary diagnosis.  Based on these allegations, it appears that Roe provided constitutionally adequate care on that date.  However, Plaintiff also alleges that he was seen by Defendants Doe and Roe on multiple occasions between February 10 and 19, 2010, that they were made aware of his worsening symptoms and test results indicating that he did not have a urinary tract infection, and yet they continued to follow the treatment plan developed on February 10 without further testing. These allegations are sufficient to state a claim of deliberate indifference at this stage of the litigation.

    3.    <u>Count II: Vicarious Liability of CMC and the County</u>

It is well settled that the County and its private contractors, such as CMC, cannot be held vicariously liable for constitutional violations committed by their employees.[19]  However, the County and CMC can be held liable if the constitutional violation alleged was the result of the company's or the County's own policy, procedure, or custom.[20]

---

deliberate indifference).

    [18] <u>Monmouth County Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987).

    [19] <u>Monell v. New York City Dept. of Soc. Servs.</u>, 436 U.S. 658, 691 (1978).

    [20] <u>Natale</u>, 318 F.3d at 583-84.

Here, Plaintiff alleges that CMC and the County entered into a contractual agreement which granted CMC the exclusive right to provide medical services to inmates at MCCF, and further provided, *inter alia*, that CMC would be responsible for covering the cost of medical referrals of inmates to outside healthcare providers.  As funds expended on inmates for outside medical services would reduce CMC's annual profits, this contract created a strong financial disincentive for CMC to refer inmates to outside providers.  In addition, Plaintiff alleges that CMC and the County failed to establish policies and practices or provide training and supervision which would ensure that their employees would make appropriate medical referrals to outside providers.

The Court finds that Plaintiff's allegation that the County and CMC entered into a written contract which created a financial disincentive to meet the serious medical needs of inmates who required referral to outside medical providers, along with the allegation that Dr. Carrillo acted pursuant to a resulting policy, practice or custom which discouraged outside referrals, is sufficient to state a claim at this stage of the litigation.

    4.    <u>Count III: State Law Professional Malpractice Claims</u>

Defendant's Motion to Dismiss states: "To the extent that Plaintiff D'Agostino fails to file a Certificate of Merit as required by Pa. R.C.P. 1042.3 within sixty days of the Complaint, his negligence claim must be dismissed."[21]  Upon review of the docket, the Court notes that Plaintiff has timely filed certificates of merit in support of his state law professional malpractice

---

[21] Pa. R. Civ. P. 1042.3 requires a plaintiff suing licensed professionals to file as to each of them a certificate of merit within 60 days of the filing of the complaint certifying that (a) a qualified expert has supplied a written statement that there exists a reasonable probability that the defendant's care fell outside acceptable professional standards and that such conduct was a cause of injury; or (b) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard; or (c) expert testimony is unnecessary to prove the claim.  The Third Circuit has held that this statute is a substantive state law that must be applied by federal courts hearing state-law malpractice actions.  <u>Liggon-Redding v. Estate of Sugarman</u>, 659 F.3d 258, 260-64 (3d Cir. 2011).

claims against moving defendants Dr. Carrillo and CMC.  As Defendants provide no other grounds for dismissing these claims, they will survive.

Plaintiff is not yet out of time to file certificates of merit in support of his state-law claims against Defendants Doe and Roe.  Therefore, the Court will deny Defendants' motion to dismiss the state law claims against Doe and Roe without prejudice.

## IV. CONCLUSION

For the reasons discussed herein, Defendants' Motion to Dismiss will be denied.  An appropriate Order follows.